McCampbell v. State.

MCCAMPRELL *v.* STATE.

*(Nashville.* December Term, 1905.)'

1.  **CRIMINAL LAW.** Presentment not bad merely because signed by only twelve grand jurors.

    Where no objection is made to any member of a grand jury, a presentment returned by it is not bad because signed by only twelve grand jurors. (*Post, p.* 101.)

    Code cited: Secs. 7055 (S); 5921 (M. & V); 5093 (1858).

    Case cited and approved: Pybos v. State, 3 Humph., 49.

    Cases cited and distinguished: State v. Baker, 4 Humph., 12; State v. Martin, 3 Tenn. Cas. (Shannon), 478.

2.  **PLEA IN ABATEMENT.** Waived by trial on merits without action thereon.

    A plea in abatement, attacking the constitution of a grand jury returning a presentment, is waived where no action of the court is invoked thereon before trial and conviction on a plea of not guilty. (*Post, p.* 102.)

3.  **SAME.** Must point out defect relied on and exclude every legal intendment in favor of presentment.

    Where it is conceded that there are twelve competent grand jurors, a plea in abatement challenging the constitution of the grand jury returning a presentment for an offense within the inquisitorial power, which fails to aver that the presentment was found upon the information of one of the grand jurors, is bad, for *non constat* that it was not found on testimony elicited in virtue of the inquisitorial power. (*Post, p.* 103.)

    Cases cited and approved: State v. Young, 1 Tenn. (Shannon) Cas., 589.

McCampbell v. State.

4. **GRAND JURY.** Has inquisitorial power over offense of selling liquor without license.

The offense of selling intoxicating liquors without a license is within the inquisitorial powers of the grand jury, and presentments may be found on the testimony of witnesses sent for by such jury. (*Post, p.* 103.)

5. **STATUTES.** Repeals by implication not favored, especially of a special statute by one general in character.

It is well settled that repeals by implication are not favored——nothing short of an irreconcilable conflict between two statutes works such a result——and especially is this true as to an act passed to deal with a special subject, while the later statute is general in character. (*Post, pp.* 105, 107.)

Cases cited: Zickler v. Union Bank & Trust Co., 104 Tenn., 277; Bailey v. Drane, 96 Tenn., 16; People v. Burtleson, 14 Utah, 258; Commonwealth v. DeCamp, 177 Pa., 112.

6. **INTOXICATING LIQUORS.** Special statute prohibiting sale of, without license, making each sale a criminal offense, is not repealed by general revenue acts applicable to the business of selling.

The statute (Acts 1899, ch. 161) making it unlawful to sell intoxicating liquors without a license, was passed under the police power of the State, and is not repealed by the subsequent general statutes (Acts of 1899, ch. 432; 1903, ch. 257), passed for the purpose of raising revenue and making it unlawful to carry on certain *vocations* declared to be *privileges*, including the *business* of selling liquor, without paying the privilege taxes therein prescribed; under the former act a single forbidden sale is a criminal offense, but such sale might be made under such circumstances that it could not be construed (Trentham v. Moore, 111 Tenn., 346) as being in the exercise of a *privilege*, and therefore not violative of the latter acts applicable to selling as a business. (*Post, pp.* 106-109.)

McCampbell v. State.

Statutes cited and construed: Acts of 1899, ch. 161; 1899, ch. 432; 1903, ch. 257.

Case cited: Blackwell v. State, 45 Ark., 90.

7. **SAME.**  Unlawful selling, punishable by both fine and imprisonment.

The statute (Acts of 1899, ch. 161) making it a criminal offense to sell intoxicating liquors without a license, fixes the punishment at both fine and imprisonment, and the court is without discretion to remit the imprisonment. (*Post, p.* 109.)

8. **SUPREME COURT.**  Will correct erroneous judgment.

Where the trial judge has failed to impose as part of the punishment, the imprisonment prescribed by a statute for its violation, this court will correct the judgment of the lower court by entering the proper judgment here. (*Post, p.* 109.)

FROM MARION.

Appeal from the Circuit Court of Marion County.— S. D. McREYNOLDS, Judge.

C. C. MOORE, for McCampbell.

ATTORNEY-GENERAL CATES, for the State.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

There are seven cases coming by appeal made by the plaintiff in error from as many judgments rendered against him in the court below. In each of these cases

there was a presentment charging him with the sale of intoxicating liquor without first obtaining a license. In one of them, it is contended the judgment should be reversed, because the presentment was signed by only twelve jurors. In *Pybos* v. *State,* 3 Humph., 49, it was held that this number of qualified grand jurors could find a valid indictment, under a well-recognized rule of the common law. This is now a statutory rule (section 7055 of Shannon's Code).

However, in *State* v. *Baker,* 4 *Humph.,* 12, the holding was in the case of a presentment that if there should be one of the grand jury not legally a member it would be void, because it might have been found upon his information which which would not be under oath.

In *State* v. *Martin,* 3 Tenn. Cas., 478, there was a presentment signed and returned by the grand jury, of which one of the members so acting was disqualified by relationship to the defendant, and it was held that the presentment could not be sustained.

In both these cases, the question was made by pleas in abatement, challenging the qualifications of grand jurors who actively participated in the consideration of the presentment; in the present case, however, there is no objection urged to any member of the grand jury returning this presentment, or to the thirteenth grand juror who seems not to have participated, but the simple insistence is that, because thirteen grand jurors did not attach their names to the presentment, it was not good. The objection is not sound, and it is overruled.

In five of the cases, pleas in abatement to the constitu-
tion of the grand jury finding the presentments were
filed.   Each of these pleas contain three grounds which
correspond in every respect with those contained in all
the others.   In the present condition of the record, pos-
sibly it is unnecessary to consider these pleas as we
find that they were filed on the 3rd of April, 1905, and
were disposed of on the 6th of April thereafter.   On
the 4th of April, however, upon his plea of not guilty
there were trials and convictions of the plaintiff in er-
ror.   If the record be correct, then the trial of the merits,
before the action of the court was invoked upon the pleas
in abatement, amounted to a waiver of them.   Lest, how-
ever, there may be a clerical error in the transposition
of these dates, we will consider the action of the trial
judge in disposing of the pleas.

The first and third grounds, on motion of the State,
were stricken out. Issue was taken on the second ground,
and on the trial there was a judgment by the circuit
judge against the plaintiff in error.   The first ground
assigned for abating the presentment was, in substance,
that one Hudson was charged and sworn as a member of
the grand jury, while the record showed that one Thom-
as, who was not qualified as a member, "participated in
the deliberations of the grand jury during the term at
which these presentments were found."   The third
ground alleged for abatement, was that the present-
ments were found upon the testimony of one Nelson, a
witness summoned at the instance of the grand jury, it

McCampbell v. State.

being alleged that in the matter of the offense charged therein the grand jury were without inquisitorial power.

These grounds were properly overruled by the trial judge. As to the first, the plea was fatally defective in failing to aver that the presentments were found on the information of one of the grand jurors. As the offense charged was within the inquisitorial powers of the grand jury the presentments may have been found on the testimony of a witness sent for by, or brought before, the grand jury, and as on the plea it is impliedly conceded that there were twelve competent grand jurors, the necessary presumption is that the presentments were found by these. *State* v. *Young*, 1 Tenn. Cas., 588. This view also sustains the action of the trial judge in his disposition of the third ground. As to the second, the question was as to the competency of the grand juror Hill, the objection having been raised that he was neither a householder nor a freeholder at the time he joined in finding these presentments. Upon the evidence submitted, the trial judge was clearly right in holding that this grand juror was a householder at the time indicated.

We take it, however, the defense seriously relied upon in all these cases is that the trial judge was without authority of law to impose jail sentences.

These presentments were made under chapter 161, p. 309, of the Acts of 1899. The caption of this act is as follows:

"An act to prohibit illegal sales of intoxicating li-

quors, and effectively provide for the collection of taxes, fine and cost."

In the first section it is provided, in substance, that any person selling or aiding in selling intoxicating liquors without a license required by law, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $50 nor more than $200 and imprisonment in the county jail or workhouse six months for each and every offense.

The second section makes it a misdemeanor for any person to allow the sale of intoxicants in or upon his premises, without the person making such sale having a license. The contention of the counsel of the plaintiff in error is that the first section of this act is by implication repealed by the sixteenth section of chapter 257, p. 629; this being the general revenue act of 1903. It is, however, not necessary to rest the argument upon the acts of 1903; for, if sound, chapter 161 in its first section was repealed by section 15 of chapter 432, p. 1051, of the general revenue act passed later in the session of the general assembly of 1899. That section is as follows:

"Be it further enacted, that it is hereby declared a misdemeanor to exercise any of the foregoing privileges without first paying the taxes prescribed for the exercise of the same, and all parties so offending should be liable to a fine of not less than $50 nor more than $500 for each day such privilege is exercised without license."

It is true this revenue act was impliedly repealed by the general revenue act of 1903, which con-

tained a similar provision. But for the purpose of emphasis, we will confine the argument in answer to this contention, to the provision of the revenue act of 1899. We think that a comparison of these acts, taking into consideration the entirely different purposes they were intended to accomplish, whatever may be the legal effect of the later act upon the earlier one, will clearly show the legislature, at least, never intended by the enactment of section 15 of the revenue act to abrogate section 1 of chapter 161. Repeals by implication are never favored, and especially is this true as to an act passed to deal with a particular or special subject, while the later act is general in character. *Zickler* v. *Union Bank & Trust Company,* 104 Tenn., 277, 57 S. W., 341.

In the earlier of these statutes the legislature was dealing particularly and exclusively with the illicit sale of liquor and seeking to prevent, by the imposition of severe penalties, the sales without license. It was passed in the exercise of the police power of the State, and for the purpose of restraining within well-defined limits, a traffic more or less hurtful to the moral and good order of society.

On the other hand the later act was one prescribing methods for the raising of public revenue and setting out the property and vocations, declared privileges and required, before their exercise, to be covered by license duly issued, was that of liquor selling.

In the construction of these acts, we think the rule laid down in the *Zickler Case* is appropriate and alto-

gether sound. That rule is "that, where the legislature treats a subject in a general manner, it is not reasonable that it intends to abrogate particular legislation applicable to a part of the same subject, unless the general act shows an intention to do so."

Prior to the passage of chapter 161, p. 309, of the Acts of 1899, the statute in force in Tennessee in respect to selling liquors without license, was section 6780 of Shannon's Code (taken from the acts of 1821 and 1837) which made the act a misdemeanor. This Code provision had no reference "to exercising a privilege." This provision, like chapter 161, p. 309, of the Acts of 1899, was passed under the police power of the State. The various revenue acts prior to that of 1899 contained a similar provision to the one found in that act. The revenue act of 1897 made the exercise of any of the privileges (including liquor selling) created by that act a misdemeanor, and punishable as such, but it was never conceived that this or any similar provision in the earlier acts repealed this Code section. However, this Code provision was not deemed sufficiently stringent in its prohibitory effects upon liquor selling, and as a consequence chapter 161, p. 309, of the Acts of 1899, was passed. As the like provision in the earlier revenue acts were never for a moment deemed a repeal by application of that provision, no more do we think can it be maintained that chapter 161, p. 309, of the Acts of 1899, is repealed by section 16 of the revenue act of that session, or a similar provision in any of the later revenue acts.

McCampbell v. State.

In order to make good the insistence of counsel for plaintiff in error he must be prepared to show that there is an irreconcilable conflict between the two acts in the matter being considered. Nothing short of this avails him. *Bailey* v. *Drane,* 96 Tenn., 16, 33 S. W., 573; *People* v. *Burtleson,* 14 Utah, 258, 47 Pac., 87; *Commonwealth* v. *De Camp,* 177 Pa., 112, 35 Atl., 601; Lewis' Sutherland, Stat. Con., 247, 259, 266-68.

While it is unfortunate that legislation on so important a matter should have been left, so as, even at this late day, to provoke an argument like the present, yet, in our opinion there is no such necessary repugnancy in the provisions being considered as to require the court to hold that the earlier act passed at the session of 1899 was repealed by the provision in question in the revenue act passed later in that session. Under the special act (act 1899, c. 161, p. 309) a single sale without license is as much a violation of the law as would be a multitude of sales, and the court is required to visit upon the offender the full measure of punishment therein prescribed. In the case of a single sale the party could not be heard to say that he was not engaged habitually, or as a vocation, in unlicensed liquor selling and therefore should not be punished. His offense was complete when the single forbidden act was done, and under the statute there was no escape for him, from a fine and imprisonment provided by the act.

It is otherwise, however, as to an indictment found under section 16, c. 432, p. 1051. This section was passed

not to protect public morals or to secure good order in
society, but to enforce the collection of revenue. Its
purpose was, by the imposition of a severe fine,
to make it to the interest of every one who under-
took to exercise any vocation or business made a
privilege by the act, first to obtain a license. Un-
der this section one might make a single sale of liquor
which, while a violation of the provisions of chap-
ter 161, would not necessarily be a violation of that sec-
tion, for such a sale might be made under such circum-
stances as that it could not be construed as having been
in the exercise of a privilege. *Trentham* v. *Moore,* 111
Tenn., 346, 76 S. W., 904.

A similar controversy arose in the courts of Arkansas
in the case of *Blackwell* v. *State,* 45 Ark., 90. In that
statute two acts were passed at the same session of the
legislature; the first one taking effect, imposed a license
tax for the state of $300, and for the county of $400,
upon every vendor of spirituous, vinous, or malt liquors,
doing business for one year or less, and provided that
any person who should engage in the sale thereof without
having paid this tax should, on conviction, be fined dou-
ble the amount of the license.

The other act was to regulate for police purposes the
same traffic. It prescribed a penalty of not less than
$200 nor more than $400 for clandestine sales. The
court held there was no implied repeal of the earlier by
the later act; that this latter act was intended to punish
the occasional sale or sales of liquor by unauthorized

persons, having no barroom or regular place of business, and whose sale would be of no particular detriment to the revenue, but hurtful to social order.  The other act, applied to those engaged in selling as a business.

We think that the authority of that case may well be invoked by the State in the present case, and we are satisfied that chapter 161, p. 309, of the Acts of 1899 can be maintained, as against the  present contention of the plaintiff in error, with reference to sound rules of statutory construction.  It results that the various assignments of error made upon the action of the trial judge by the plaintiff in error are overruled.

The State files the record in these cases for error and insists that the action of the trial judge in suspending the punishment of imprisonment was unauthorized, and should be corrected by this court.  The statute under which these presentments were found is imperative as to the punishment to be inflicted upon conviction of an offender.

The trial court was without discretion as to the infliction of this punishment upon conviction.  It follows, therefore, that the order suspending this judgment was erroneous, and will be corrected by a proper judgment entered in this court.