PEOPLE, RESPONDENT, *v.* ANDREAS BURTLESON, APPELLANT.

STATUTES—REPEAL—NUISANCE—INTENT—HARMLESS ERROR.

1. Comp. Laws of Utah 1888, § 4566, which defines a public nuisance, and denounces the annoying, injuring, or endangering the comfort, health, repose, or safety of three or more persons as a public nuisance, was not impliedly repealed by sections 4, 5, c. 63, Sess. Laws 1892, amending section 2264, Comp. Laws Utah 1888, relating to "befouling waters," since section 4566 relates to and was intended to denounce and punish public nuisances in general, and is applicable whenever a nuisance affects three or more persons, while sections 4, 5, of the act of 1892 relate only to, and were intended to denounce and punish the befouling of waters of any stream used for domestic purposes by the inhabitants of any city, town or village, and leave wholly unprotected all persons who are not such inhabitants, and since an act which might constitute a nuisance under the former law might not constitute an offense under the latter.

2. Where two statutes do not relate to the same subject, and are not enacted for the same purpose, they are not repugnant to each other.

3. A witness who was not an expert was permitted to state his opinion as to a certain subject, calling for expert testimony, but upon cross examination modified his statement by limiting it to the facts of the case, and as the facts in all probability would have produced the same effect upon the jury, and the evidence outside of the objectionable statement was ample to warrant the jury in returning a verdict against the defendant, *held*, that while it was improper for the witness to state his opinion, it was not, under the circumstances, prejudicial error.

4. Where a party so uses his property as to annoy, injure or endanger the comfort, repose, health, or safety of three or more persons, his acts are unlawful, and he is liable to prosecution under section 4566, Comp. Laws Utah 1888, even though he

may be in pursuit of a lawful business, and conducting it in a reasonable and careful manner.

5. In determining the question of a nuisance under the statute, the motive or intent with which the act complained of was committed cannot be considered.

( No. 683.  Decided October 23, 1896.)

Appeal from the First district court, Territory of Utah. Hon. W. H. King, *Judge.*

Andreas Burtleson was convicted of having committed a public nuisance, and appeals.  *Affirmed.*

*Samuel A. King,* for appellant.

*A. C. Bishop,* Attorney General *(Benner X. Smith,* of counsel), for the people.

BARTCH, J.:

This is a criminal prosecution under section 4566, Comp. Laws. Utah 1888, and the defendant was charged with having committed a public nuisance by unlawfully and willfully driving, herding, and keeping about 2,000 sheep in and upon a small stream, the water of which was used for culinary and domestic purposes by the inhabitants of the town of Annabella, in Sevier county, Utah, and by rendering the said water impure, and thereby endangering the comfort and health of three persons, named in the complaint, and divers other persons, residents of said town, and using the water for said purposes. Upon conviction, and sentence to pay a fine and costs, the defendant appealed to this court.

The statute above referred to, so far as material to this decision, reads as follows: "A public nuisance is a crime against the order and economy of the territory, and consists in unlawfully doing any act, or omitting to

perform any duty, which act or omission, either: (1) Annoys, injures or endangers the comfort, health, repose or safety of three or more persons," etc. Counsel for the appellant contends that this section is in conflict with sections 4, 5, c. 63, Sess. Laws 1892, and is repealed to the extent of such conflict, and that the court erred in refusing to instruct the jury, at the close of the prosecution's testimony, to return a verdict in favor of the defendant, there being no evidence nor any claim that he had violated any provisions of the act of 1892. If this contention be correct, then the former law is repealed by the later, and this by implication, because there are no words of repeal in the act. An implied repeal will not result unless the necessary operation and effect of the new law cannot be harmonized with the necessary operation and effect of the old, or unless it is clear that the legislature intended the new law to be a substitute for the old; but such intention will not be presumed. It must appear from the context. So, in case of repugnancy, which renders the statutes irreconcilable, the former in point of time will be repealed only to the extent of such repugnancy. Sections 4 and 5 of the act of 1892, which, it is insisted, repeal the statute under which this prosecution was instituted, amend section 2264, Comp. Laws Utah 1888, relating to "befouling waters," and were enacted as subdivisions thereto. Under section 4 it is made unlawful "to dip or wash sheep in any stream, or to construct or maintain or use any pool or dipping vat for dipping or washing sheep in such close proximity to any stream used by the inhabitants of any city, town or village, for domestic purposes, or to construct or maintain any corral, yard or vat, to be used for the purpose of shearing or dipping sheep, within seven miles of any city, town or village, where the refuse or filth from said corral or yard would naturally find its way into any

stream of water used by the inhabitants of any city, town, or village, for domestic purposes." Under section 5 it is made unlawful "to establish and maintain any corral, camp or bedding place for the purpose of herding, holding or keeping any cattle, horses or sheep, within seven miles of any city, town or village, where the refuse or filth from said corral, camp or bedding place will naturally find its way into any stream of water used by the inhabitants of any city, town or village for domestic purposes." It will be noticed that section 4 is limited to sheep, and denounces and forbids the washing, dipping, or shearing of them, and maintaining any corral for that purpose, along a stream at any point within seven miles of any city, town, or village, where the refuse will naturally find its way into the stream, the waters of which are being used for domestic purposes by the inhabitants of such town, city, or village. The same may be said of section 5, except that its operation is not limited to sheep alone, but includes cattle and horses. It will further be noticed that both of these sections apply only to the inhabitants of cities, towns, and villages, and leave wholly unprotected all persons who are not such inhabitants, but live in the more isolated portions of the state, and even the very acts prohibited may, for aught that appears in the provisions of the sections, be committed with impunity without the seven-mile limit, no matter how great the nuisance may be which is thereby created. How can it be contended that an act with such limitations can repeal by implication a law general in its nature? Section 4566 relates to public nuisances in general, and is applicable whenever a nuisance affects three or more persons. The act of 1892 relates to the befouling of waters of any stream used for domestic purposes by the inhabitants of any city, town, or village. While an act which would constitute an offense under the

later law might be a nuisance, still an act which might constitute a nuisance under the former law might not, and doubtless, in most cases, would not, constitute an offense under the later. It is quite clear that the act of 1892 was not intended as a substitute for section 4566, and two statutes are not repugnant to each other unless they relate to the same subject, and are enacted for the same purpose, which is not the case here. This question of a repeal by implication was considered in *Ex parte Gannett*, 11 Utah 283, where the late territorial supreme court entertained similar views. We conclude that the act of 1892 is not in conflict with, and did not repeal section 4566, and that this prosecution was properly instituted under that section.

Counsel for the appellant further insists that the court erred in permitting the witness Clark, after testifying that the water was filthy and impure, because of the sheep being driven across it, and allowed to water at the stream, to state that he knew the water was impure, because his little girl drank some of it, and it made her very sick, causing her to vomit, and be sick at the stomach. This was afterwards, on cross-examination, modified, by the witness stating that he was not sure that the drinking of the water caused the little girl to be sick, but that shortly after drinking it she complained of being sick. We do not think it was proper for the witness to state his opinion, because he was not an expert, but it was competent for him to state the facts connected with the occurrence, and as those facts would in all probability have produced the same effect upon the jury as the objectionable statement, and as the evidence, outside of such statement, was ample to show that the water had been rendered impure by the sheep, and to warrant the jury in returning a verdict against the de-

fendant, we are of the opinion that its admission was not prejudicial error.

It is also contended that the court erred in not permitting the defendant to prove that at the time of the doing of the acts complained of he was on his way to the shearing pens in that vicinity, and on the usual route to the summer range; that the shearing pens were occupied, and that this compelled him to remain there three or four days, and await his turn to shear the sheep. It appears that this evidence was offered to show that on the occasion in question the defendant was in pursuit of a lawful business, and was handling his property with usual and ordinary care, and not in an unreasonable and unwarrantable manner. This, however, was not the point at issue. The only question to be determined was whether or not a nuisance had been committed, and in determining this question the motive or intent with which the defendant did the act complained of could not be considered. If his acts created a nuisance, it is immaterial how innocent the intent was, or how cautiously and reasonably the business was conducted, or whether the business was lawful. These elements do not enter into the question of nuisance, and to allow them to be considered in such a case would be unwarrantably to limit the operation of the maxim, "*Sic utere tuo ut alienum non lædas.*" Therefore any evidence offered for the purpose of showing that these elements existed was inadmissible, and properly ruled out, because immaterial. If the defendant so used his property as to annoy, injure, or endanger the comfort, repose, health, or safety of three or more persons, then his acts were unlawful, and he was guilty of the charge preferred against him, under the statute, even though he was in the pursuit of a lawful business, and conducting it in a reasonable and careful manner. Every person must so use his own property

as not to injure that of his neighbor, and therefore if, as in the case at bar, a person uses his own property in such a way as to cause an injury to another, he is liable. Sir William Blackstone, in his Commentaries on the Laws of England (3 Bl. Comm. c. 13), said: "If one erects a smelting house for lead so near the land of another that the vapour and smoke kill his corn and grass, and damages his cattle therein, this is held to be a nuisance. And by consequence it follows, that if one does any other act, in itself lawful, which, yet being done in that place necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do the act, where it will be less offensive." 16 Am. & Eng. Enc. Law, 930. *Frost* v. *Phosphate Co.*, 42 S. C. 402; *Moses* v. *State*, 58 Ind. 185; *Fertilizer Co.* v. *Malone*, 73 Md. 268; *Seacord* v. *People*, 121 Ill. 623.

Having determined that the evidence offered was inadmissible, and that its rejection was proper, it becomes unnecessary to discuss the questions raised by the defendant's requests to charge, which were based on the same theory of the law. We are of the opinion that there is no reversible error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.